**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MIGHTY DEER LICK, INC., dba as | ) | |
| MIGHTY DEER LICK SWEET APPLE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: |
| | ) | |
| v. | ) | Jury Demand |
| | ) | |
| MORTON SALT, INC., and | ) | |
| K+S SALT, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, Mighty Deer Lick ("MDL"), by and through its attorneys, and for its Complaint against Defendant, Morton Salt, Inc. and K+S Salt, LLC, states as follows:

### I.      INTRODUCTION

1.      This case arises out of a longstanding contract between the parties in which Plaintiff granted Defendant a license to market and sell Plaintiff's commercial deer feed, deer lick, horse lick and livestock products.

2.      Unfortunately, after Defendant obtained Plaintiff's formula and contacts, it unilaterally ended the contract with Plaintiff, at which time Plaintiff learned, inter alia, that Defendant was infringing on Plaintiff's registered trademarks and interfering with its business relationships, and that Defendant had been engaged in a concerted plan to do so for years.

### II.   PARTIES, JURISDICTION AND VENUE

3.      The Court has original jurisdiction over the subject matter of this cause of action pursuant to 28 U.S.C. §§1331, 1332, 1338(a) and (b).  Plaintiff brings an action pursuant to the Lanham Act 15 U.S.C. §§ 1051, 1121, et. seq.; and the Trademark Dilution Act, 15 U.S.C.

§§1125(c) and 1127. Further, the case also involves citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs. Also, this is brought pursuant to 28 U.S.C. §1367 as the court has supplemental jurisdiction over the state law claims.

4.      This Court has jurisdiction over the Defendants because they transact business in this District and are otherwise subject to jurisdiction.

5.      Plaintiff Mighty Deer Lick is a Michigan Domestic Corporation with its principal place of business in Powers, Michigan, in the County of Menominee and, thus, is a citizen of the State of Michigan under 28 § U.S.C. 1332(c)(1).

6.      Defendant Morton Salt is a Delaware corporation organized and existing under the laws of the State of Delaware, and is wholly owned by K+S Atkiengesellschaft, a German corporation, incorporated in Kassel, Germany. Morton Salt's principal place of business and headquarters is in Chicago, Illinois (hereinafter "Morton" or collectively part of "Defendant").

7.      Defendant K+S Salt, LLC is a limited liability company organized and existing under the laws of the State of Delaware and its registered agent is located at 850 New Burton Road, Suite 201, Dover, Delaware 19904. Upon information and belief, its principal place of business is in Chicago, Illinois (hereinafter "K+S" or collectively part of "Defendant").

8.      Defendants' business operations in the United States include the mining, manufacture and merchandising of salt and salt products, including mixing of salt and salt blocks for animal feed.

9.      Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and Defendant's principal place of business is in Chicago, Illinois. Moreover, Defendants have engaged in the acts complained of within this district.

### III.   GENERAL ALLEGATIONS

10.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 9 above as if fully set forth herein.

11.    Mighty Deer Lick, Inc., dba as Sweet Apple, was established in 1974 by brothers Steven and Theodore J. Janke (hereinafter "MDL" or Plaintiff).

12.     It was the first company to commercially market deer feed, deer lick, horse lick and certain livestock products, including its Trade Marked products, Apple Blocks, Sweet Corn Blocks, Acorn Blocks, Mighty Horse Sweet Apple Blocks and Sugar Blocks.

13.    Deer are deficient in salt and so they crave it, causing them to lick and chew wood, dirt, rocks and other materials as well as toxic amounts of poisonous plants.  Placing Mighty Deer Licks products in specific areas can deter deer and wildlife from seeking salt on highways left from winter road maintenance.  In back yards, the Mighty Deer Lick products can encourage wildlife viewing.

14.    After discovering that combinations of sweet additives attracted the deer more effectively, Mighty Deer Lick trademarked its product identification for its salt lick products with the United States Patent and Trademark Office or otherwise trademarked and/or registered their products.

a.   Mighty Deer® was filed on September 12, 1988 and registered on April 10, 1990 to Theodore J. Janke dba Mighty Deer Lick Company, Registration Number 1591153, Serial Number 73751405; and assigned to Mighty Deer Lick, Inc. on July 31, 1992; and renewed as required with the second renewal in 2010; and Goods and Services identified as feed blocks for wild animals and maintained continuously thereafter; and, further this trademark was

# MIGHTY DEER

**a.   Mighty Deer® word mark**



acknowledged by Defendants in the Schedule A to the October 4, 2001 contract;



b.    Mighty Deer® Sweet Apple®

b.    Mighty Deer® Sweet Apple® was filed on September 16, 1988 and registered on August 15, 1989, to Theodore J. Janke, Registration Number 1552179, Serial Number 73752156; and the trademark was assigned to Mighty Deer Lick, Inc. on July 31, 1992; and renewed in 2009; and Goods and Services are identified as animal feed in block form and maintained continuously thereafter and, further this trademark was acknowledged by Defendants in the Schedule A to the October 4, 2001 contract;



c.    Mighty Deer® Sweet Apple® Pocket Block®

c.    Mighty Deer® Sweet Apple® Pocket Block® was filed on July 13, 1989 and registered on April 24, 1990, to Mighty Deer Company, Registration Number 1593302, Serial Number 73812242; and the trademark was assigned to Mighty Deer Lick, Inc. on July 31, 1992 and continuously maintained until it was not renewed after January 15, 2016; and, further this trademark was acknowledged by Defendants in the Schedule A to the October 4, 2001 contract;



d.    Design of Horse and Apple

d.    Design of Horse and Apple was filed on February 18, 1992 and registered on October 27, 1992, to MDL Sweet Apple, Inc., Registration Number 1727966 and renewed as required with the second renewal in 2012; and Goods and Services identified as animal feed in block form and maintained continuously thereafter; and, further this trademark was acknowledged by Defendants in the Schedule A to the October 4, 2001 contract;



**e.** Mighty Deer® Sweet Corn® Pocket Block®

**e.** Mighty Deer® Sweet Corn® Pocket Block® was filed on July 12, 1993 and registered on November 1, 1994 to Mighty Deer Lick, Inc., Registration Number 1861101, Serial Number 74410901 and renewed as required with the second renewal in 2014; and Goods and Services are identified as animal feed in block form and maintained continuously thereafter; and, further this trademark was acknowledged by Defendants in the Schedule A to the October 4, 2001 contract;



**f.** Mighty Deer® Sweet Acorn® Pocket Block®

**f.** Mighty Deer® Sweet Acorn™ was filed on March 4, 1996 and registered on October 14, 1997 to Mighty Deer Lick, Inc., Registration Number 2104725, Serial Number 75066846 and renewed in 2007; and Goods and Services identified as G&S animal feed and maintained continuously thereafter; and, further this trademark was acknowledged by Defendants in the Schedule A to the October 4, 2001 contract;



**g.** Sweet Sugar word mark

**g.** Sweet Sugar® - Sweet Sugar **word mark** was filed on May 15, 2003 and registered on April 20, 2004, to Mighty Deer Lick, Inc., Registration Number 2834063, Serial Number 76514397 and renewed in 2014 and Goods and Services identified as animal feed and continuously maintained thereafter;.



**h.** Sweet Sugar word mark and design

**h.** Sweet Sugar **design** was registered on October 25, 2005 to Mighty Deer Lick, Inc. Registration Number 3008230, Serial Number 7656**0**067, and continuously maintained thereafter and, further this trademark was acknowledged by Defendants in the Schedule A to the October 4, 2001 contract;



i. **Mighty Horse™ Sweet Apple® Pocket Block®**

i.  Mighty Horse™ Sweet Apple® Pocket Block® Mighty Deer® was filed on September 12, 1988 and registered on April 10, 1990 to Theodore J. Janke dba Mighty Deer Lick Company, Registration **Number** 1591153, Serial Number 73751405; and assigned to Mighty Deer Lick, Inc. on July 31, 1992; and renewed as required with the second renewal in 2010; and Goods and Services identified as feed blocks for wild animals and maintained continuously thereafter; and, further this trademark was acknowledged by Defendants in the Schedule A to the October 4, 2001 contract;  the design of the Horse and Apple was registered as 1,727,966 and the trademark designation was also acknowledged by Defendants in the Schedule A to the October 4, 2001 contract;

j.  Mighty Deer® Home Meat Curing Kit™ was developed in the 1990s by MDL.  The Home Meat Curing Kit was not registered with the USPTO; Defendant acknowledged the trademarked product in the Schedule A to the October 4, 2001 contract.

15.  For over 30 years and continuously without interruption to the present, Plaintiff marketed products under its famous Mighty Deer Lick marks.  Plaintiff has used the Marks to identify and promote its products and to distinguish its products from those offered by others.

16.  Over the years and as a result of plaintiff's substantial advertising and promotional efforts, Plaintiff has become widely known to consumers as the source of products bearing the Mark.  The Mark is recognized by consumers as being associated with Plaintiff's high quality goods and has become synonymous with the goodwill and reputation of the Plaintiff.

17.     Plaintiff's marks have become incontestable.

18.     The Jankes and Morton were engaged in a business relationship since 1959.

19.     At all times relevant to this complaint, Defendant has been aware of the goodwill represented by the Marks and that consumers recognize the Marks as identifying the products of Plaintiff, distinguishing Plaintiff's products from those of others and symbolizing products of the highest quality.

20.     On May 10, 1989, Mighty Deer Lick, Inc. entered into a contract with Morton Salt Division of Morton Thiokol, Inc. for Morton to manufacture four pound bricks composed of MDL's products for MDL.  Exhibit "A", Contract, ¶ 1.

21.     In the 1989 contract, Morton expressly agreed that it would not "utilize MDL's formula to produce bricks for any reason other than for sale to MDL." *Id.* ¶ 2.

22.     On October 4, 2001, Morton International Inc., acting through its Morton Salt Division, and MDL entered into a Sales and License Agreement with a term of at least ten years. Exhibit "B"; See also p. 7.

23.     That Agreement acknowledged that MDL was the owner of the trademarks listed in Schedule "A" to the contract and that they were its "sole and exclusive property." *Id.* at pp 1, 7 and Schedule "A" to Ex. "B"

24.      The 2001 contract gave Morton "a license to package and sell animal licks, bricks, blocks and home meat curing kits (the "Products") under labels bearing the Marks" subject to the restrictions, limitations and terms of the contract and applicable law. *Id.* at pp. 1-2.

25.     MDL was permitted to continue to use the Marks simultaneously with Morton, defined as "the ability to make direct sales of the Products to existing customers, Southern States Coops; Agway Stores; Bradley Caldwell; Mills Fleet Farm; Blain Supply; Orschein Farm &

Home; Bass Pro Shops; Cabela's; Tractor Supply Company; Atwoods Distributing; Do It Best Corporation and HWI.  *Id.* at pp 2-3.

26.     Morton's use of the Marks was only as authorized by MDL and the use of the Marks on any "package, label, or promotional materials, …must be submitted to Mighty Deer Lick for prior approval."  *Id. at* p. 2.

27.     Morton was also required to pay MDL royalties as follows on any of Morton's sales of Plaintiff's products:

  a.   5% for the first $2,000,000 net sales of the Products;

  b.   4% for the next $1,000,000 net sales of the Products;

  c.   3% for any net sales of the Products beyond $3,000,000; and

  d.   an additional 2% on all net sales (regardless of the total dollar amount tiers set forth above) provided that MDL utilized its best effort to advertise these products on a nationwide basis, maintains the Marks as currently registered and actively promotes these products.

  *Id.* at p 3.

28.     Morton agreed to "police" the Marks licensed herein and to assert the trademark against any infringement.  *Id.* at p. 7.

29.     Morton also agreed to cease using Mighty Deer Lick's marks upon termination of the License Agreement.  *Id.* at p. 7.

30.     Morton agreed to promote the Products and "to conduct its business affairs in a manner which will not disparage or reflect any discredit upon the name of Mighty Deer Lick." *Id. at* p. 8.

31.     Morton and MDL entered into an Amendment of the October 4, 2001 contract on May 21, 2004.  Exhibit "C"

32.     In 2009, Morton Salt notified MDL that it had been acquired by K+S Atkiengesellschaft, a German Corporation, through its purchase of Morton International, Inc.  Morton assured MDL that it remained committed and dedicated to serving its customers and that it did not anticipate changes day-to-day processes.

33.     On August 7, 2015 Morton Salt, Inc., as purportedly the successor in interest to the October 4, 2001 Sales and License Agreement between Morton International, Inc. and MDL served notice of termination of the agreement effective October 4, 2016.  The termination was a surprise to MDL.

34.     After many years of a mutually profitable business relationship, Defendant started to fail to provide the necessary quantities needed to service MDL's customers.

35.     Defendant started failing to provide MDL with the necessary products while at the same time assuring MDL that it intended to resolve its production problems.

36.     Mr. Janke, the Co-Owner and President of MDL worked very hard to maintain the amicable and co-operative business relationship that had existed in the past with Defendant.

37.     Each year, he provided Defendant schedules of his projected production needs well in advance.

38.     However, Defendant failed to meet the needs of MDL's clients, while assuring MDL that it intended to resolve the situation.

39.     Defendant also failed to try and increase the sales volume – contrary to the prior practices between the parties and its contractual obligations.

40.     Defendant ignored or rejected new opportunities to expand the sales while continuing to reassure Plaintiff that it wanted to get the supply situation where it needed to be.

41.     Unfortunately, when Defendant could not meet the production requirements, and thus the needs of the retailers selling MDL products, it caused Plaintiff to lose sales.

42.     As part of the contract to manufacture, MDL provided its prized secret formula to Defendant and Defendant manufactured the salt blocks.

43.     However, MDL started receiving complaints of poor quality, including by the vendor hired to package the product.

44.     Defendant admitted that the rejection numbers were "alarming," but the problem remained unresolved.

45.     The deer feed, deer lick, horse lick and livestock products are subject to state regulatory agencies and, yet, Defendant repeatedly manufactured products that did not meet state requirements.

46.     At one point, Plaintiff learned that Defendant changed MDL's formulation without its consent, which led to customer complaints and regulatory violations.

47.     Defendant also manufactured products with labels that were not readable and with poor packaging, negatively impacting MDL.

48.     Defendant also failed to resolve the formulation problem for several months to the detriment of Plaintiff.

49.     The formulation problem was exacerbated by Defendant's refusal to provide MDL ingredient samples for testing, contrary to its contractual obligations.

50.     The poor quality caused MDL to lose placement at one of its longstanding retailers due to the poor quality, the high price, chipping and breaking and bad packaging.

51. When the parties entered into its original agreement in 1989, MDL furnished Defendant with mold/dies for the manufacture of its 25 lb. Apple Flavored Blocks at Defendant's Manistee, MI location.

52. Upon termination of the contract, Defendant never returned the mold dies to Plaintiff notwithstanding Plaintiff's repeated demands to Defendant. Upon information and belief, Defendant is still using the dies.

53. Upon information and belief, Defendant improperly and without permission or license used the mold dies to manufacture its own products, including but not limited to its "white blocks product."

54. After the termination of the contract, upon information and belief, Defendant continues to wrongfully use the mold dies.

55. Plaintiff has learned that Defendant is selling products overseas that use Plaintiff's Formulation and Marks.

56. Morton's parent company owns a European entity, known as ESCO.

57. Upon information and belief, ESCO was used by Defendant as a conduit to take over Plaintiff's contract with another company so that Defendant's agent could sell Plaintiff's repackaged product under its own name - ESCO Apple Blocks.

58. Defendant also licensed the right to sell MDL's meat curing product, but, once again, Plaintiff has learned that Defendant misappropriated the ingredients in MDL's product is selling it as its own product.

59. Upon information and belief, Morton failed to "police" the infringement on MDL's Products, and, did not even police its or its subsidiaries' and/or affiliates' infringement of Plaintiff's products and, in fact, facilitated such infringement.

60. Defendant had been selling products to MDL's exclusive accounts in violation of the agreement and that it had been doing so since at least 2001 and that it had literally taken over an important MDL client account.

61. Defendant was not paying it all of the royalties that were due and owing; and MDL was not granted an audit regarding same.

62. A number of MDL's clients voiced a number of quality concerns with Defendant's manufacture of MDL's products.

63. Defendant had been more interested in entering the business of animal feed supply as a competitor to its licensor and client, MDL, and its actions were and are detrimental to MDL and intended to squeeze MDL out of the market.

64. Defendant improperly manufactured the formula supplied to it by MDL, causing MDL to suffer a loss of reputation.

65. Defendant also has used the formula to create products to sell under Plaintiff's misappropriated Marks.

66. Defendant has intentionally and willfully adopted and used Plaintiff's Marks.

67. Defendant has also intentionally and willfully adopted and used a Mark that is confusingly similar to Plaintiff's Marks.

68. Defendant's adoption of Plaintiff's Marks was intentional and deliberate and designed to trade-off of and take unfair advantage of the goodwill and reputation of Plaintiff.

69. Defendant has manufactured, caused to be manufactured, marketed and distributed and/or sold deer lick and related horse lick, and livestock products which infringe on Plaintiff's rights; violate the contract between the parties and breach other duties under statutory, common law and equity; including but not limited to violating trade secrets laws.

70.     In 2001, Steven D. Janke, as President of Mighty Dear Lick Company, developed Hot Pepper Salt or Pepper Salt, a product for human consumption, which he brought to Defendant.

71.     This Hot Pepper Salt was MDL's original product.

72.     Morton sold the MDL Hot Pepper Salt for several years.

73.     Without giving any reason, Defendant abruptly stopped selling the MDL Hot Pepper Salt product.

74.     Upon information and belief, Morton is selling MDL's Hot Pepper Salt product under its own name as Morton Spicy Season All Seasoned Salt.

75.     Defendant has manufactured, caused to be manufactured, marketed and distributed and/or sold deer lick and related horse lick, and livestock products and a hot pepper salt product which infringe on Plaintiff's rights; violate the contract between the parties and breach other duties under statutory, common law and equity; including but not limited to violating trade secrets laws.

76.     Plaintiff was not aware that Defendant was infringing on its products and otherwise engaging in acts breaching the contract and violating its duties to

77.     Plaintiff, including but not limited to violation of trade secrets law and contract.

78.     Defendant was under a continuous duty to disclose to Plaintiff the infringement, breach of contract and other breaches of duty, and violations of statutory and common law, including but not limited to violation of trade secrets law.

79.     Defendant knowingly, affirmatively, and actively concealed its and its subsidiaries' and/or affiliates' infringement and other breaches of duty and violations of statutory and common law, including but not limited to violation of trade secrets law and contract.

## COUNT I
## <u>BREACH OF CONTRACT</u>

80.     Plaintiff incorporates paragraphs 1-79 as if fully set forth herein.

81.     Plaintiff entered into a contract with Defendant Morton Salt in 1989 ("1989 Contract").  Plaintiff also entered into a Sales and License Agreement with Defendant on or about October 4, 2001 ("Sales and License Agreement") (collectively, "the contracts").

82.     Plaintiff performed all terms and conditions required of it in the contracts.

83.     Defendant willfully violated and breached the contracts, including but not limited, to the following:

a.   Infringement of its trademarks;

b.   Failing to police the infringement of its trademarks;

c.   Using MDL's marks in an unauthorized manner;

d.   Interfering with MDL's contractual right to make direct sales to its existing customers;

e.   Failing to pay royalties as required;

f.   Selling and/or providing defective products contrary to the terms of the contract;

g.   Failing to meet the specifications for quality;

h.   Failing to comply with the law in the manufacture and distribution of such products;

i.   Failing to indemnify MDL from claims and damages arising from Morton's failure to produce quality products;

j.   Failing to timely and adequately provide products;

    k.  Terminating the agreement so that it can continue to infringe on MDL's products and compete with it in the market;

    l.  Continuing to sell MDL's products in the United States and overseas and using its marks without compensation to MDL; and

    m.  Failing to produce sufficient agreed upon quantities.

    n.  Selling a hot salt product that was essentially MDL's product;

    o.  Selling a meat curing kit that was essentially MDL's product;

    p.  Other ways to be discovered.

84.    Defendant's breaches have caused Plaintiff irreparable harm and damage, including, but not limited to, consequential and lost profits.

85.    Plaintiff seeks judgment against Defendant for all equitable remedies and legal damages to which it is entitled, including, but not limited to, costs and attorneys' fees and interest.

## COUNT II
## TORTIOUS INTERFERENCE WITH
## A BUSINESS RELATIONSHIP

86.    Plaintiff incorporates paragraphs 1-85 as if fully set forth herein.

87.    Plaintiff and third parties Atwood, and other retailers had a valid business relationship or business expectancy.

88.    Defendant had knowledge of the business relationship between Plaintiff and the third parties.

89.    Defendant intentionally and improperly coerced the third parties to terminate, breach a contract, or withhold a valid business expectancy from Plaintiff.

90.     Defendant was not authorized to interfere with the dealings of Plaintiff and the third parties.

91.     Defendant's interference caused injury and damages to Plaintiff.

92.     Plaintiff seeks judgment against Defendant for all such equitable remedies and legal damages to which it is entitled.

## COUNT III
## TORTIOUS INTERFERENCE WITH CONTRACT

93.     Plaintiff incorporates paragraphs 1-92 as if fully set forth herein.

94.     Plaintiff had a valid contract with third party retailers to sell its products.

95.     Defendant had knowledge of the contract between Plaintiff and the third parties.

96.     Defendant intentionally and improperly coerced the third parties to terminate or breach the contract it had with Plaintiff.

97.     Defendant was not authorized to interfere with the dealings of Plaintiff and the third parties.

98.     Defendant's conduct caused Atwood and other retailers to disrupt or terminate the business relationship or expectancy.

99.     Plaintiff was injured and suffered damages as a result of Defendant's conduct.

100.    Plaintiff seeks judgment against Defendant for all such equitable remedies and legal damages to which it is entitled, including but not limited to, costs and attorneys' fees and interest.

## COUNT IV
## VIOLATION OF THE TRADE
## SECRETS ACT, 18 U.S.C. §1831

101.    Plaintiff incorporates paragraphs 1-100 as if fully set forth herein.

102.    Plaintiff's formula for the Product, the manufacturing, production and

packaging devices, methods, techniques, and processes; and the compilation of customer and distribution lists and/or data are protected Trade Secrets under the Trade Secrets Act, 18 U.S.C. § 1831, et. seq. and constitute valuable information used in Plaintiff's business which (a) derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) are the subject of efforts that are reasonable under the circumstances to maintain secrecy.

103.   Plaintiff intended, and Defendant understood or should have understood, based on the contracts that Defendant agreed to, that the formula for the Product, the manufacturing, production and packaging devices, methods, techniques, and processes and the compilation of customer and distributor lists and/or data associated with the Product were not to be made available to third parties or the public generally, and were not to be used by Defendant for their own personal profit or gain.

104.   Defendant acquired knowledge of the Plaintiff's protected Trade Secrets through contractual agreements and understandings that they would maintain confidential.

105.   Defendant has disclosed or used Plaintiff's protected Trade Secrets without Plaintiff's consent in violation of the Trade Secrets Act.

106.   Defendant, upon information and brief, has used and converted Plaintiff's trade secrets without authorization.

107.   Defendant knows that such information has been appropriated or converted without Plaintiff's authorization.

108.   Defendant's conduct has injured Plaintiff and, caused it to suffer damages and unless enjoined by this court, will continue to cause Plaintiff damage and irreparable harm.

109.    Defendant seeks judgment against Defendant for all such equitable remedies, legal and statutory damages to which it is entitled, including, but not limited to, punitive damages, costs and attorneys' fees.

**COUNT V**
**VIOLATION OF ILLINOIS**
**TRADE SECRETS ACT**
**765 ILCS 1065/2, et. seq.**

110.    Plaintiff incorporates paragraphs 1-109 as if fully set forth herein.

111.    Plaintiff's formula for the Product, the manufacturing, production and packaging devices, methods, techniques, and processes; and the compilation of customer and distribution lists and/or data are protected Trade Secrets under the Illinois Uniform Trade Secrets Act (ILCS 1065/2, et. seq.) and constitute valuable information used in Plaintiff's business which (a) derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) are the subject of efforts that are reasonable under the circumstances to maintain secrecy.

112.    Plaintiff intended, and Defendant understood or should have understood, based on the contracts that Defendant agreed to, that the formula for the Product, the manufacturing, production and packaging devices, methods, techniques, and processes and the compilation of customer and distributor lists and/or data associated with the Product were not to be made available to third parties or the public generally, and were not to be used by Defendant for their own personal profit or gain.

113.    Defendant acquired knowledge of the Plaintiff's protected Trade Secrets through contractual agreements and understandings that they would maintain confidential.

114. Defendant has misappropriated, disclosed or used Plaintiff's protected Trade Secrets without Plaintiff's consent in violation of the Illinois Trade Secrets Act.

115. Plaintiff has been damaged as a proximate result of Defendant's acquisition, misappropriation and use of Plaintiff's trade secrets.

116. Defendant's conduct has caused Plaintiff damages and, unless enjoined by this Court, will continue to cause Plaintiff damage and irreparable harm.

117. Plaintiff seeks judgment against Defendant for all such equitable remedies and legal and statutory damages to which it is entitled, including but not limited to, punitive damages, costs and attorneys' fees and interest.

**COUNT VI**
**TRADEMARK INFRINGEMENT**
**VIOLATION OF LANHAM ACT**

118. Plaintiff repeats and realleges the allegations of paragraphs 1-117 as if fully set forth herein.

119. The United States Patent and Trademark Office (USPTO) has granted federal trademark registrations to the MDL marks. MDL uses the registration symbol ® and ™ on its goods and in advertising associated with its MDL marks.

120. This registration is now incontestable.

121. Defendant was well aware of Plaintiff's use of these Marks prior to the use by Defendant of the Marks for selling either Plaintiff's products or selling similar products with Plaintiff's Marks or with similar Marks.

122. Defendant is using a copy or colorable imitation of the MDL marks in a manner that is likely to confuse, deceive and/or cause mistake among consumers and, therefore, is infringing Plaintiff's rights in its Marks in violation of 15 U.S.C. §1114(1).

123.    Defendant's purpose and intent in adopting the Marks was and is intended to deceive consumers.

124.    Unless restrained, Defendant's infringement of the MDL marks will continue to cause irreparable injury to Plaintiff unless Plaintiff is granted an order from this Court preliminarily and permanently enjoining Defendant and its agents, employees and others acting in concert with them from directly or indirectly infringing the MDL marks in any manner, including by using any name, mark, design or logo that is confusingly similar to the MDL marks in connection with the sale, offer for sale, advertising, or promotion of any goods or services.

125.    Defendant has committed and, unless enjoined by this Court, will continue to cause confusion in the mind of consumers as to the relationship or affiliation between the parties.

126.    By reason of Defendant's acts and practices in violation of Section 32(1) of the Lanham Act as set forth above, Plaintiff has suffered and will continue to suffer injury and damages.

127.    Plaintiff is further entitled to recover damages sustained as a result of Defendant's wrongful conduct, in an amount to be determined; to recover defendant's profits; and to recover Plaintiff's attorneys' fees and other costs herein.  Based upon the circumstances of the case, including the willful nature of Defendant's conduct, Plaintiff is further entitled to recover treble the amount found as actual damages pursuant to 15 U.S.C. §1117.

## COUNT VII
## TRADEMARK DILUTION
## 15 U.S.C. §§ 1125(c) and 1127

128.    Plaintiff repeats and realleges the allegations of paragraphs 1-127 as if fully set forth herein.

129. The PTO determined that the Plaintiff's Marks as set forth herein met all requirements for federal registration and issued Certificates of Registration to Plaintiff for the trademarks. This registration is now incontestable.

130. Plaintiff has used and continues to use the MDL Marks in interstate commerce. The Marks have become and continue to be "famous" in the deer lick, horse lick, livestock and feed industry within the meaning of 15 U.S.C. § 1125(c).

131. Defendant was well aware of Plaintiff's use of these Marks prior to the use by Defendant of the Mark for selling either Plaintiff's products or selling similar products with Plaintiff's Marks.

132. Defendant has made and continues to make a commercial use in commerce of the actual Mark as well as a slight variation of the Marks in a manner that causes dilution of the distinctive quality of such Marks, and lessens the capacity of such Marks to identify and distinguish Plaintiff's goods.

133. Defendant's purpose and intent in adopting the Marks was and is to deceive consumers.

134. Defendant has committed and, unless enjoined by this Court, will continue to cause confusion in the mind of consumers as to the relationship or affiliation between the parties.

135. Plaintiff is entitled to an order from the Court enjoining Defendant, its agents, employees and others acting in concert with them, from directly or indirectly making any further commercial use of the marks, or any other names, marks or logos that are substantially similar to the MDL marks.

136. Because Defendant has willfully intended to cause dilution of the MDL Marks, Plaintiff is further entitled, pursuant to 15 U.S.C. §§ 1117 and 1125(c)(2) to recover all damages

resulting from Defendant's unlawful conduct, including (i) defendant's profits; (ii) Plaintiff's damages, (iii) Plaintiff's costs of suit; and (iv) Plaintiff's reasonable attorneys' fees.

## COUNT VIII
## <u>VIOLATION OF 15 U.S.C. §1125(a)</u>

137.    Plaintiff repeats and realleges the allegations of paragraphs 1-136 as if fully set forth herein.

138.    The acts of Defendant alleged herein., including its use of the MDL Marks, are likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection or association of Defendant or Defendant's product with Plaintiff, or as to the sponsorship, or approval of Defendant's goods, services or commercial activities by Plaintiff.  Defendant's actions further misrepresent the nature, characteristics or qualities of Defendant's good, services or commercial activities.

139.    Plaintiff has no adequate remedy at law for the foregoing wrongful conduct of Defendant, in that (i) Defendant's actions damage and threaten to continue to damage Plaintiff's unique and valuable property, injury to which cannot be adequately compensated by monetary damages; (ii) the damages to Plaintiff from Defendant's wrongful actions are not precisely and fully ascertainable; (iii) the wrongful acts of Defendant injure and threaten to continue to injure Plaintiff's reputation and goodwill; and (iv) the damage resulting to Plaintiff from Defendant's wrongful conduct, and the conduct itself, are continuing.

140.    Unless restrained, Plaintiff will suffer irreparable injury.  Plaintiff  is, therefore, entitled to an order enjoining Defendant and its agents, employees and others from directly or indirectly (i) manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any product which tends to relate or connect such product in any way to Plaintiff or to any goods or services offered, provided, sold, manufactured,

sponsored or approved by, or connected with Plaintiff; (ii) using any mark that is confusing and similar (or the same) as the MDL marks; and (iii) making any false representation of the origin of the goods offered for sale.

141.    Plaintiff is entitled to recover damages caused by Defendant's wrongful conduct and to recover their attorneys' fees and such other damages as allowable by statute and/or equity or at law.

**COUNT IX**
**VIOLATION OF § 43(a) OF THE LANHAM ACT**
**(UNFAIR COMPETITION)**

142.    Plaintiff repeats and hereby realleges the allegations of paragraph 1-141 above, as if fully set forth herein.

143.    Plaintiff's Marks have become uniquely associated with and identify Plaintiff as the source for deer lick, deer feed, horse lick and livestock products.

144.    Defendant's Mark is practically identical to Plaintiff's Mark in style, coloration, appearance and impression.

145.    The use by Defendant of its Mark constitutes deliberate and willful copying of Plaintiff's Marks.

146.    Defendant's intention in adopting and using its Mark was to deceive, mislead and confuse consumers to enable Defendant to trade off of Plaintiff's reputation and goodwill.

147.    Defendant's acts constitute unfair competition in violation of Section 43(a) of the Lanham Act.

148.    By reason of Defendant's conduct, Plaintiff has suffered and will continue to suffer damage to its business, reputation, and goodwill.

149.     By reason of Defendant's conduct, Defendant has caused and, unless enjoined by the Court, will continue to cause immediate and irreparable harm to Plaintiff for which there is no adequate remedy at law, and for which Plaintiff is entitled to injunctive relief, and any other available equitable remedy or legal damages, attorneys' fees and statutory damages as applicable.

**COUNT X**
**COMMON LAW UNFAIR COMPETITION**

150.     Plaintiff repeats and hereby realleges the allegations of paragraph 1- 149 above as if fully set forth herein.

151.     With full knowledge of Plaintiff's trademarks, Defendant has been manufacturing, causing to be manufactured, selling, distributing and otherwise selling or offering for sale in interstate and international commerce, products bearing the Marks that compete within Plaintiff's zone of expansion with Plaintiff's products.

152.     The acts of Defendant constitute unfair competition and infringement of Plaintiff's common law rights in its Marks.

153.     As a result, Plaintiff's considerable investment of time and money, the Marks have developed secondary and distinctive meaning to consumers.  The Marks have come to indicate to consumer products and a meaning of quality originating with Plaintiff.

154.     Defendant's actions in adopting its Mark have been willful and have been undertaken with the purpose of deceiving consumers.

155.     As a result of such conduct, Defendant has profited and unless such conduct is enjoined by the Court, will continue to profit by misappropriating the time and money that Plaintiff has invested in establishing its reputation and goodwill.

156.     As a result of such conduct, Plaintiff has suffered and, unless such acts and practices are enjoined by this Court, will continue to suffer damage to its business, reputation and goodwill.

157.     As a result of such conduct, Defendant has caused and, unless enjoined by this Court, will continue to cause consumer confusion as to the source, origin, sponsorship and/or affiliation of Defendant's products and their relationship to Plaintiff and Plaintiff's products.

158.     As a result of Defendant's conduct, Plaintiff has suffered, and unless enjoined by this Court, will continue to suffer injury and damages for which Plaintiff is entitled to relief.

159.     By reason of Defendant's conduct, Defendant has caused, and unless such conduct is enjoined by this Court, will continue to cause immediate and irreparable harm to Plaintiff for which there is no adequate remedy at law.

**COUNT XI**
**TRADEMARK INFRINGEMENT**
**VIOLATION OF COMMON LAW**

160.     Plaintiff repeats and realleges the allegations of paragraphs 1- 159 above as if fully set forth herein.

161.     The PTO determined that the Plaintiff's Marks as set forth herein met all requirements for federal registration and issued Certificates of Registration to Plaintiff for the trademarks.  This registration is now incontestable.

162.     Defendant was well aware of Plaintiff's use of these Marks prior to the use by Defendant of the Marks for selling either Plaintiff's products or selling similar products with Plaintiff's Marks.

163.     Defendant's purpose and intent in adopting the Marks was and is to cause confusion and/or to deceive consumers.

164. Defendant has committed and, unless enjoined by this Court, will continue to cause confusion in the mind of consumers as to the relationship or affiliation between the parties and to deceive as to the source of origin of such goods or services.

165. By reason of Defendant's acts and practices, Plaintiff has suffered and will continue to suffer injury and damages.

166. By reason of Defendant's conduct, Defendant has caused, and unless such acts and practices are enjoined by the Court, will continue to cause, immediate and irreparable harm and damages to Plaintiff for which there is no adequate remedy at law.

167. Plaintiff seeks judgment against Defendant for all such equitable remedies, statutory and legal damages to which it is entitled.

## COUNT XII
## TRADEMARK INFRINGEMENT
## VIOLATION OF ILLINOIS LAW
## 765 IL CS 1036/60, et. seq.

168. Plaintiff repeats and realleges the allegations of paragraphs 1-167 as if fully set forth herein.

169. The PTO determined that the Plaintiff's Marks as set forth herein met all requirements for federal registration and issued Certificates of Registration to Plaintiff for the trademarks. This registration is now incontestable.

170. Defendant was well aware of Plaintiff's use of these Marks prior to the use by Defendant of the Marks for selling either Plaintiff's products or selling similar products with Plaintiff's Marks.

171. Defendant's purpose and intent in adopting the Marks was and is to cause confusion and / or to deceive consumers as to the source of origin of such goods or services.

172.     Defendant has committed and, unless enjoined by this Court, will continue to cause confusion in the mind of consumers as to the relationship or affiliation between the parties and to deceive as to the source of origin of such goods or services.

173.     By reason of Defendant's acts and practices in violation of Illinois Law, Plaintiff has suffered and will continue to suffer injury and damages.

174.     By reason of Defendant's conduct, Defendant has caused, and unless such acts and practices are enjoined by the Court, will continue to cause, immediate and irreparable harm and damages to Plaintiff for which there is no adequate remedy at law.

175.     Plaintiff seeks judgment against Defendant for all such equitable remedies, statutory and legal damages to which it is entitled.

## COUNT XIII
## DILUTION OF TRADEMARK

176.     Plaintiff repeats and realleges the allegations of paragraphs 1-175 as if fully set forth herein.

177.     The PTO determined that the Plaintiff's Marks as set forth herein met all requirements for federal registration and issued Certificates of Registration to Plaintiff for the trademarks.  This registration is now incontestable.

178.     Defendant was well aware of Plaintiff's use of these Marks prior to the use by Defendant of the Marks for selling either Plaintiff's products or selling similar products with Plaintiff's Marks.

179.     Defendant was well aware that the Plaintiff's Marks had inherent and acquired distinctiveness.

180.     Defendant was well aware of the decades that Plaintiff had used these Marks.

181.   Defendant was well aware that in the deer lick, deer feed, horse lick and livestock industry the Plaintiff's Marks had been advertised and were well known.

182.   The Plaintiff's Marks are used throughout the United States and on the internet such that they are known internationally.

183.   The goods are sold to retailers and wholesalers who sell these types of products. The goods are marketed and sold by reputation, including, but not limited to, by word of mouth and during face-to-face contacts by MDL.   The products are sold by Plaintiff through the internet, mail, telephone, during in person contact and visits to retailers and wholesalers and by direct sales.

184.   Defendant was well aware of Plaintiff's use of these Marks prior to the use by Defendant of the Marks for selling either Plaintiff's products or selling similar products with Plaintiff's Marks.

185.   Defendant's purpose and intent in adopting the Marks was and is to cause confusion and / or to deceive consumers as to the source of origin of such goods or services.

186.    Defendant has committed and, unless enjoined by this Court, will continue to cause confusion in the mind of consumers as to the relationship or affiliation between the parties and to deceive as to the source of origin of such goods or services.

187.    By reason of Defendant's acts and practices, Plaintiff has and will suffer injury to its business reputation and dilution of its Marks.

188.   By reason of Defendant's conduct, Defendant has caused, and unless such acts and practices are enjoined by the Court, will continue to cause, immediate and irreparable harm and damages to Plaintiff for which there is no adequate remedy at law.

189.    Plaintiff seeks judgment against Defendant for all such equitable remedies, statutory and legal damages to which it is entitled, including but not limited to punitive damages, lost profits and reasonable attorneys' fees.

## COUNT XIV
## VIOLATION OF TRADE DRESS

190.    Plaintiff repeats and realleges the allegations of paragraphs 1-189 as if fully set forth herein.

191.    Plaintiff created a uniquely designed product that included a means of carrying the salt blocks.

192.    Defendant was well aware of Plaintiff's over thirty year use of this unique and distinctive appearance of its products.

193.    The industry is familiar with MDL's unique appearance of its products.

194.    Defendant's purpose and intent in adopting Plaintiff's trade dress was and is to cause confusion and / or to deceive consumers.

195.     Defendant has committed and, unless enjoined by this Court, will continue to cause confusion in the mind of consumers as to the relationship or affiliation between the parties and to deceive as to the source of origin of such goods or services.

196.     By reason of Defendant's use of Plaintiff's distinctive trade dress, Plaintiff has suffered and will continue to suffer injury and damages.

197.    By reason of Defendant's conduct, Defendant has caused, and unless such acts and practices are enjoined by the Court, will continue to cause, immediate and irreparable harm and damages to Plaintiff for which there is no adequate remedy at law.

198.    Plaintiff seeks judgment against Defendant for all such equitable remedies, statutory and legal damages to which it is entitled.

## COUNT XV
## UNJUST ENRICHMENT

199.     Plaintiff incorporates paragraphs 1-198 as if fully set forth herein.

200.     Plaintiff conferred benefits on Defendant by granting licensing rights for Defendant to use its trademarks with prior approval.

201.     Defendant received a substantial benefit in the form of sales revenue from selling the deer licks without prior approval from Plaintiff.

202.     Defendant's retention of this benefit without providing the compensation Plaintiff is due would be unjust and inequitable.

203.     Because Defendant's retention of the non-gratuitous benefit conferred on them by purchasers of the product is unjust and inequitable, Defendant must pay restitution to the Plaintiff for their unjust enrichment, as ordered by the Court.

## COUNT XVI
## COMMON LAW AND STATUTORY CONVERSION

204.     Plaintiff incorporates by reference paragraphs 1-203 as if fully set forth herein.

205.     Defendant wrongfully and improperly withheld royalties and payments for products that rightfully belong to Plaintiff and the mold / dies.

206.     All or some of improperly withheld royalties and payments remain in the possession and control of Defendant.

207.     Defendant has willfully and intentionally exercised dominion, control and use over Plaintiff's property in a manner that is inconsistent with its rights.

208.     Defendant's holding, use and dominion exercised over Plaintiff's property was and continues to be intentional.  Defendant has refused and continues to refuse to release Plaintiff's property.

209.    Defendant has a legal, ethical and contractual obligation to return these monies to Plaintiff.

210.    Plaintiff has been damaged as a result of Defendant's conversion as it has been deprived of the value, use and enjoyment of its property, as well as the interest that could have been earned upon investment of the converted property and the profits that could have been made with the converted property.

211.    Defendant's conduct as described above constitutes both a common law and statutory conversion.

212.     Plaintiff is entitled to such damages, including any statutory and actual damages and interest, costs and attorneys' fees and any additional damages to which it is entitled, including punitive damages, and/or an order directing Defendant to perform immediately its obligations under the parties' agreement.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands Judgment against Defendants and requests relief as follows:

1.    On each and every Claim, damages as allowable, including, but not limited to, actual and consequential damages and lost profits;

2.    On each and every Claim, preliminary and injunctive relief;

3.    On each and every Claim, attorneys' fees as allowable;

4.    On each and every Claim, exemplary, enhanced and/or punitive damages as provided by law;

5.    On each and every Claim, interest as provided by law;

6.    On each and every claim, all available statutory damages;

7.      The costs of suit, including expenses and attorneys' fees;

8.      All equitable relief allowable and as the court deems just, including, but not limited to, disgorgement, restitution.

9.      All such other relief as the Court may deem proper and just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury in this action of all issues triable by jury that are raised within this Complaint or which may be raised hereinafter.


Date:   August 11, 2017                    Respectfully submitted,


                                           */s/Christopher E. Kentra*
                                           Christopher Kentra  (#6211295)
                                           Corey T. Hickman  (#6317871)
                                           COZEN O'CONNOR
                                           123 N. Wacker Dr., Suite 1800
                                           Chicago, IL 60606
                                           Telephone: (312) 474-7962
                                           Facsimile: (312) 878-2006
                                           ckentra@cozen.com

                                           Sharon S. Almonrode
                                           (USDC ND Illinois
                                           Trial and General Bar 6/9/10)
                                           THE MILLER LAW FIRM, P.C.
                                           950 W. University Dr., Ste. 300
                                           Rochester, Michigan 48307
                                           Telephone: (248) 841-2200
                                           Facsimile: (248) 652-2852
                                           ssa@millerlawpc.com